UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SCOTT BALDWIN,<br><br>Plaintiff,<br><br>v.<br><br>DOROTHY LIVERS, et al.,<br><br>Defendants. | CAUSE NO. 3:21-CV-682-DRL-MGG |

REPORT AND RECOMMENDATION

Scott Baldwin, pro se, proceeds on an Eighth Amendment claim against Nurse Livers and Dr. Liaw for failing to provide adequate medical treatment for his jaw in July 2021. ECF 13. On February 14, 2022, the defendants moved for summary judgment, asserting the affirmative defense of failure to exhaust administrative remedies. ECF 22. On August 30, 2022, the court denied the motion, finding a genuine dispute of material fact as to whether Baldwin had a means of obtaining a grievance form other than by requesting one from his caseworker. ECF 45. This case was referred to the undersigned magistrate judge for an evidentiary hearing to resolve this factual dispute pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and the hearing was held on March 21, 2023. ECF 53, ECF 70.

The defendants submitted the grievance policy for inmates housed in correctional facilities maintained by the Indiana Department of Corrections. ECF 65-2. According to the policy, inmates must attempt to informally resolve the incident with the appropriate staff member within five days of the incident. *Id.* at 8-13. If the inmate is

dissatisfied with the response to the informal attempt, he must submit a formal grievance to the grievance manager within ten days of the incident. *Id.* If the inmate is dissatisfied with the response to the formal grievance, he may appeal to the Warden and to the Department Offender Grievance Manager. *Id.*

At the hearing, Shannon Smith, facility grievance specialist for the Westville Correctional Facility, testified that inmates can obtain grievance forms by asking staff, from the law library, or from the grievance office. According to the grievance records, Baldwin did not submit any grievances related to his claim. Philip Sonnenberg, unit team manager, testified that he regularly gave grievance forms to inmates who requested them and that stacks of forms are accessible to correctional staff. He had no personal recollection of Baldwin but would have never informed him that the exclusive means to obtain a grievance form was by writing to his caseworker.

According to the operative complaint, on July 18, 2021, Baldwin slipped and fell in a puddle of water in the dormitory washroom. ECF 12. As a result, he experienced jaw and neck pain and did not receive adequate treatment. *Id.* On August 3, 2021, Baldwin initiated this case by filing a complaint. ECF 1. On October 19, he amended the complaint representing that he did not submit a grievance because "[he] spoke with both maintenance and the complex director, Mr. Sonnenberg." ECF 4. On January 11, 2022, he amended his complaint again, representing that "[he] eventually filed a grievance on the issue but never heard back on it." ECF 12,

At the summary judgment stage, Baldwin represented as follows:

> During the time this incident happened, prison officials and staff told offenders that in order to file a formal grievance, one must first submit a State Form 36935 – Request for Interview' to their respective caseworker describing the incident and asking for a formal grievance. [I] was led to believe [this was] the required first step formerly known as the informal grievance.
>
> The caseworker would then deem the issue either grievable or not. If so, a form would be sent, filled out, submitted, and appealed at the appropriate stages. At the time, I was led to believe by State employees that I was attempting to retrieve a grievance form using the only method available to me. [Exhibits] A & B are clear proof I tried not once but twice.

ECF 42 at 2-3. He attached a two Requests for Interview, dated August 25, 2021, and September 20, 2021, directed at his caseworker asking for grievance forms in connection with his medical care. ECF 66 at 3.

The defendants deposed Baldwin on September 28, 2022, after the ruling on the motion for summary judgment but before the evidentiary hearing. ECF 67-1. At this deposition, Baldwin testified as follows:

> **Attorney Dillon:** In your affidavit, in response to the summary judgment motion, you said that you were told the only – at least at the time that you were having the jaw issue, so like July, August, September, October of 2021 – that you were told you could only get a grievance from your counselor. Who told you that?
>
> **Baldwin:** That was Mr. Sonnenberg. That's Ms. Sonnenberg's husband.
>
> **Attorney Dillon:** So Mr. and Mrs. Sonnenberg both work in the library?
>
> **Baldwin:** No. Mr. Sonnenberg is the unit team manager over the general service complex here at Westville.
>
> **Attorney Dillon:** So did you specifically ask him about how to get a form and he said you have to ask your counselor?
>
> **Baldwin:** I did.

3

**Attorney Dillon:** What did he say exactly?

**Baldwin:** Let's see. I asked him somewhere between 8/1/21 and 8/20. He came to A dorm where I was at and I asked him how I go about filing a grievance because I've never done it. And he stated that the grievance department was over bogus grievances[1] and the first step you had to do is write your caseworker, explain to them the situation that was going on. And your caseworker at that time would deem it either a grievable issue or a non-grievable issue and then would give a grievance, you know, a formal grievance form to fill out. And then at that time you fill it in and then turn it into whoever, you just stick it in the mailbox. And then somebody at that time deals with it.

* * *

**Attorney Dillon:** Did you ever ask anybody else besides Mr. Sonnenberg about, "Hey, how do I get a grievance form?"

**Baldwin:** Well, I didn't think it would be necessary because I had no reason not to believe Mr. Sonnenberg at the time.

**Attorney Dillon:** So you were just waiting to hear back from Ms. Gardner?

**Baldwin:** Yeah. I was waiting for – yeah. I was waiting for her to send another one. So I wrote her back and I got the dates put down on 8/25/21 and then once again on 9/20/21 when I asked her for separate grievances. Because I know in the law it says up until the time that you have your appointment by the doctor, you are allowed to file that grievance. And she just never wrote back on either one of them.

**Attorney Dillon:** Were you aware before you filed the complaint that you had to grieve before you filed the complaint?

**Baldwin:** Yes.

**Attorney Dillon:** So I guess my question is then, since you have two years to file the lawsuit from the date of the incident, why didn't you keep trying to use the grievance process before filing the lawsuit?

---

[1] While the meaning of this testimony as phrased in the deposition is somewhat unclear, at the hearing, Baldwin testified to the effect that the grievance department was "overrun" by too many grievances.

4

> **Baldwin:** Because after you have your doctor's appointment, you're no longer allowed to grieve the issue.
>
> **Attorney Dillon:** Okay, I see what you're saying. So at what point did you finally see Dr. Liaw and he address the jaw issue, at least to your satisfaction?
>
> **Baldwin:** It was ten – I have the date wrote down. It was – I don't have the date. It was 10/20/22, I believe, or somewhere around there. Or no. 10/20/21, my fault. Somewhere around there. It was almost three months to the date of when I first started writing.

*Id.* at 13-17.

At the hearing, Baldwin testified consistent with his representations at summary judgment and his deposition testimony. Chad Bean, an inmate at the Westville Correctional Facility since 2017, testified that he was told that everything goes through the counselors and that inmates needed to write to obtain forms. In his experience, caseworkers did not respond consistently. Keith Caldwell, an inmate at the Westville Correctional Facility since May 2021, testified that he was told at orientation to obtain grievance forms from the grievance office or a caseworker. Correctional officers did not provide grievances to inmates due to concerns about the frequency of frivolous grievances. Obtaining a grievance could be difficult due to inconsistent responses.

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*,

5

286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

As an initial matter, the undersigned observes Baldwin's inconsistency in prior pleadings with respect to whether he submitted grievances related to his claims and his reasons for not doing so. But, even crediting Baldwin's most recent narrative, the defendants still prevail on the exhaustion issue. The defendants produced evidence that the Westville Correctional Facility maintained a grievance process and that grievance forms were available from staff, the grievance office, and the law library. Though the inmates' testified that they had different understandings of where they could obtain grievance forms, this testimony was insufficient to undermine the grievance officer's

testimony regarding the general availability of forms from staff, the grievance office, or the law library. For instance, no witness testified that he had unsuccessfully tried to obtain grievance forms from the grievance office or law library during the relevant timeframe or that they had observed another inmate's unsuccessful efforts. Nor does any evidence suggest that Baldwin could not have obtained grievance forms from these sources if he had tried during the relevant timeframe.

Baldwin argues that Unit Team Manager Sonnenberg rendered the grievance process unavailable by telling him that grievance forms could be obtained only through his caseworker and that that caseworker did not respond to his requests. Baldwin's deposition testimony provides the most detailed account of what Sonnenberg told him, but this account does not suggest that Sonnenberg indicated that grievance forms could be obtained only through caseworkers. Instead, it indicates that Sonnenberg considered two ways to obtain grievance forms and recommended first way over the second way while remaining silent on any other ways. The undersigned finds that Sonnenberg did not render the grievance process unavailable by responding in this manner.

The undersigned's attention is also drawn to the timing of Baldwin's efforts to initiate the grievance process. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Significantly, Baldwin initiated this case by filing a complaint on August 3, 2021, but did not make any effort to initiate the grievance process until he wrote to his

7

caseworker on August 25, 2021. In other words, prior to filing this case, Baldwin did not exhaust administrative remedies even to the extent he knew they were available to him.

For these reasons, the undersigned:

(1) FINDS that Scott A. Baldwin had a means of obtaining a grievance form other than by requesting one from his caseworker;

(2) FINDS that Unit Team Manager Sonnenberg did not render the grievance process unavailable by recommending that Scott A. Baldwin obtain a grievance form from his caseworker; and

(3) RECOMMENDS that this case be dismissed without prejudice because Scott A. Baldwin did not exhaust administrative remedies before filing this lawsuit as required by 42 U.S.C. § 1997e(a).

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

SO ORDERED on May 9, 2023

                                                    s/ Michael G. Gotsch, Sr.
                                                    Michael G. Gotsch, Sr.
                                                    United States Magistrate Judge